MURPHY, Circuit Judge,
concurring.
Although I concur in the result and in most of the court’s analysis, I write separately to highlight more fully the unique legal status of the Red Lake Band of Chippewa Indians and the Red Lake Reservation. In respect of the band’s sovereignty and special history, it is proper to examine all the circumstances thoroughly before its courts are divested of jurisdiction.
It is difficult to overstate the differences between the Red Lake Reservation and nearly all other Indian reservations. The Red Lake Band has retained extensive sovereignty over its reservation, subject only to federal lawT which specifically addresses Red Lake and to preemptive federal criminal law. It has retained much of the autonomy and sovereignty that existed on all reservations at the time the Supreme Court decided Worcester v. Georgia, 31 U.S. 515, 561, 6 Pet. 515, 8 L.Ed. 483 (1832), which recognized that Indian tribes maintained a government to government relationship with the United States to which the states were not parties. See Comm’r of Taxation v. Brun, 286 Minn. 43, 174 N.W.2d 120, 122 (1970). Although the Court has long since abandoned the Worcester rule that “ ‘the laws of [a State] can have no force’ ” within reservation boundaries, Nevada v. Hicks, 533 U.S. 353, 361-62, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), quoting Worcester, 31 U.S. at 561, that rule largely holds true as to the Red Lake Reservation.
Unlike other tribes and reservations, including the Three Affiliated Tribes of the *858 Fort Berthold Indian Reservation where the accident in Strate occurred, the Red Lake Band has retained its government to government relationship with the United States. As part of its retention of significant sovereignty, the tribe was only one of three to resist the extension of state criminal and civil jurisdiction to cover claims involving Indians. See 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-26; 28 U.S.C. § 1360; but see State v. Holthusen, 261 Minn. 536, 113 N.W.2d 180, 187-88 (1962) (state has jurisdiction over crimes committed on the Red Lake Reservation by non Indians against non Indians).
Also unlike nearly all other reservations, the land of the Red Lake Reservation “has never been formally ceded to the United States.”[6] Brun, 174 N.W.2d at 122; see Minnesota v. Hitchcock, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954 (1902) (detailed history of the formation of the Red Lake Reservation). The Red Lake Band successfully resisted allotment, making the reservation a “closed” reservation in which all lands are held communally by the tribe.[7] This status has made Red Lake perhaps the most insular and nonintegrat-ed reservation in the United States; it has also preserved for the band an independence not experienced on other reservations. The tribe has the right to control who is allowed to enter and to live on the reservation. At one time the tribe required nonmembers working or engaging in business on the reservation to apply for passports. In the past the tribal council has barred journalists from the reservation. After the tragic shootings at Red Lake High School in March 2005, as one example, journalists who ventured onto the reservation past a designated parking lot faced arrest for trespass.
The state’s approach to the Red Lake Reservation is reflected in the Minnesota Department of Transportation’s manner of dealing with the tribe. Employee Joseph McKinnon’s affidavit indicates that the Department treats the Red Lake Reservation as a foreign jurisdiction and requests permission from the tribe before entering the reservation to perform maintenance work on the state highway, unlike the manner in which the state treats all other Minnesota reservations. Moreover, state law enforcement agencies, including the state patrol, do not have authority over members on the reservation, even on the state highway. See Red Lake Band of Chippewa Indians v. State, 311 Minn. 241, 248 N.W.2d 722, 728 (1976); see also State v. Stone, 572 N.W.2d 725 (Minn.1997) (state may not enforce driving laws against members of an Indian tribe within the tribe’s reservation).
Despite the fact that the accident in this case involved a member of the band[8] and *859 despite the significant difference between Red Lake and the Fort Berthold Indian Reservation, I agree that the record shows that this accident occurred on a state highway for which Minnesota had obtained a valid right of way that is open to the public and that is maintained as part of the state trunk highway system, I therefore agree that the district court did not err by granting summary judgment to the Nords.
While I cannot agree with the court’s conclusion that “the facts of the present case are on all fours with Strate,” I do agree that the district court did not abuse its discretion by denying the Rule 56(f) tribal court request for additional time to conduct discovery. The tribal court did not make its discovery needs known to the district court in a timely fashion. This federal action was filed on June 10, 2005, and it was only on May 1, 2006, after the Nords had filed for summary judgment and after the tribal court itself had moved for a stay of discovery, that it requested additional discovery. While the tribal court’s choice to concentrate on legal theories for dismissal rather than to engage in expensive discovery is understandable, there was considerable opportunity exclusive of stayed time during which it could have pursued its discovery needs.

. The tribe ceded large portions of the original reservation to the United States but has never ceded the largest part of the current reservation centered around Lower Red Lake where the accident at issue occurred. See United States v. Minnesota, 466 F.Supp. 1382, 1386-87 (D.Minn.1979) (describing three treaties by which the Red Lake Band ceded land to the federal government). The Red Lake Band refers to this land as the ‘‘diminished” reservation.

. The Red Lake Reservation is apparently one of only two reservations in the nation to enjoy this status.

.Unlike Strate the injured here, Donald Kelly, is a member of the Red Lake Band and therefore the band was not necessarily a “ ‘stranger [] to the accident.’ ” Strate v. A-1 Contractors, 520 U.S. 438, 457, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), quoting A-1 Contractors v. Strate, 76 F.3d 930, 940 (8th Cir.1996). Although the other driver, Chad Nord, is a nonmember, he was driving a vehicle owned by Nord Trucking which had a contract with the band to haul timber from the reservation. See Montana v. United States, 450 U.S. at 565-66, 101 S.Ct. 1245 (1981) (‘‘A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who en *859 ter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.”). There is, however, no evidence suggesting that that relationship had any causal effect on the accident.